**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 27, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

No. 09-4193

CLARENCE EUGENE VINCENT,

Defendant - Appellant.

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D. Ct. No. 2:08-CR-00252-TS-1)**

Submitted on the briefs:[*]

J. Edward Jones, Heber City, Utah, for Appellant.

Carlie Christensen, Acting United States Attorney, and Diana Hagen, Assistant United States Attorney, Office of the United States Attorney for the District of Utah, Salt Lake City, Utah, for Appellee.

Before **TACHA**, **EBEL**, and **HARTZ**, Circuit Judges.

**TACHA**, Circuit Judge.

---

[*]After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The cause is therefore ordered submitted without oral argument.

Clarence Eugene Vincent was found guilty by a jury of two counts of knowingly distributing methamphetamine in violation of 21 U.S.C. § 841(a)(1). On appeal, Mr. Vincent argues that the district court erred by refusing to instruct the jury on the defense of entrapment. He also contends that the district court improperly denied his motion requesting disclosure of the government's confidential informant ("CI"). We take jurisdiction pursuant to 28 U.S.C. § 1291 and AFFIRM.

## I. BACKGROUND

In late 2007, the Federal Bureau of Investigation ("FBI") began investigating Matt Izenberg, a purported white supremacist leader and methamphetamine trafficker who was a suspect in two homicides. Special Agent Greg Rogers, the lead investigator, sought to purchase methamphetamine from Mr. Izenberg in order to establish a criminal case against him. He was able to arrange a meeting with Mr. Izenberg with the help of a CI.

On January 10, 2008, Agent Rogers, acting under cover, and an individual named Ryan Arthur met with Mr. Izenberg to purchase drugs. The meeting did not go well and ended with Agent Rogers ordering Mr. Izenberg out of his truck. After the failed drug purchase, Agent Rogers determined that he could more effectively infiltrate Mr. Izenberg's methamphetamine business by recruiting additional confidential sources. The CI suggested that Mr. Vincent could be such

a confidential source because of his connections with Mr. Izenberg. Furthermore, the CI believed he could get Mr. Vincent to sell drugs to Agent Rogers, who could, in turn, use that criminal act to persuade Mr. Vincent to cooperate in his investigation. This strategy of using the threat of prosecution to get a person to cooperate as an informant is commonly employed by the FBI.

Several days before Agent Rogers's failed drug purchase from Mr. Izenberg, Mr. Vincent was contacted by his good friend Mr. Arthur. Mr. Arthur indicated he was looking to be introduced to Mr. Izenberg, and Mr. Vincent was able to arrange a meeting between the two. On January 10 (the date of Agent Rogers's failed drug purchase), Mr. Arthur contacted Mr. Vincent and explained that he had arranged an unsuccessful drug deal between Mr. Izenberg and a buyer, and that Mr. Izenberg had damaged his reputation with the buyer. At this time, however, he did not ask Mr. Vincent to find him any methamphetamine. Instead, he suggested that Mr. Vincent and his girlfriend join him on a trip to Mesquite, Nevada and he offered to pay for transportation, food, lodging, and gambling.

After roughly a week in Mesquite, Mr. Arthur drove Mr. Vincent and his girlfriend back to their home in Salt Lake City, Utah. During the return trip, Mr. Arthur again mentioned the failed drug deal. This time, however, Mr. Arthur asked Mr. Vincent if he would do him a favor. He explained that Agent Rogers was his friend's brother and how Mr. Izenberg had damaged his reputation with Agent Rogers. He then asked Mr. Vincent if he would get him some

methamphetamine in order to repair his reputation.  Mr. Vincent agreed.

Mr. Vincent ultimately sold Agent Rogers methamphetamine on two occasions.  On February 13, 2008, Agent Rogers met Mr. Vincent in the parking lot of a Kentucky Fried Chicken and purchased 11.9 grams of methamphetamine.  Then, on March 5, 2008, Mr. Vincent sold Agent Rogers 20.4 grams of methamphetamine in a night club parking lot.

On April 15, 2008, FBI agents visited Mr. Vincent's home and spoke with him about his drug dealing activities.  Mr. Vincent admitted that he sold drugs to an individual named Greg Rogers, but denied any other sales.  Agent Rogers then entered the home, identified himself as an FBI agent, and asked for Mr. Vincent's assistance.  Mr. Vincent agreed to help in the investigation of Mr. Izenberg, but was arrested after he began revealing Agent Rogers's identity as an undercover agent.  Mr. Vincent was subsequently charged with two counts of distributing methamphetamine.

Before trial, Mr. Vincent filed motions seeking disclosure of the identities of the government's CI and requesting a jury instruction on the defense of entrapment.  The district court denied both motions.  Mr. Vincent then renewed his motions at trial and the court again denied both.  The jury ultimately returned guilty verdicts on both counts, and Mr. Vincent was sentenced to 120 months' imprisonment to be followed by 96 months of supervised release.  Mr. Vincent now appeals, contending that the district court erred in denying his motions.

## II. DISCUSSION

A.    Entrapment Instruction

To raise a valid entrapment defense, a defendant must show two elements: "government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct." *Matthews v. United States*, 485 U.S. 58, 63 (1988).  In the district court, Mr. Vincent argued that the government induced him to engage in drug trafficking by exploiting his friendship with Mr. Arthur, who he believes to have been the CI.  The district court ruled that even assuming Mr. Arthur was the CI, Mr. Vincent failed to raise a "genuine factual dispute regarding the element of inducement."** Accordingly, the district court refused to instruct the jury on entrapment.  On appeal, Mr. Vincent argues that he produced sufficient evidence of government inducement to warrant an entrapment instruction. "[W]hether there is evidence sufficient to constitute a triable issue of entrapment is a question of law" which we review de novo.  *United States v. Ortiz*, 804 F.2d 1161, 1164 (10th Cir. 1986).

"Inducement is government conduct which creates a substantial risk that an undisposed person or otherwise law-abiding citizen would commit the offense." *United States v. Scull*, 321 F.3d 1270, 1275 (2003) (quotations omitted).

_____

**Additionally, the district court found conflicting evidence regarding the predisposition element, but refused to rule on whether Mr. Vincent met his burden with regard to that element.  We do not address this aspect of the district court's decision.

"Governmental inducement may take the form of persuasion, fraudulent representations, threats, coercive tactics, harassment, promises of reward, or pleas based on need, sympathy or friendship." *Ortiz*, 804 F.2d at 1165. Evidence that the government initiated the contact with the defendant, proposed the crime, or solicited or requested the defendant to engage in criminal conduct, standing alone, is insufficient to constitute inducement. *Id.*

"The question of entrapment is generally one for the jury, rather than for the court." *Matthews*, 485 U.S. at 63. This general rule, however, is not absolute. Indeed, a defendant is only entitled to an entrapment jury instruction when he has produced "'sufficient evidence from which a reasonable jury could find entrapment.'" *Scull*, 321 F.3d at 1275 (quoting *Matthews*, 485 U.S. at 62). "For the purposes of determining the sufficiency of the evidence to raise the jury issue, the testimony most favorable to the defendant should be accepted." *Id.* (quotations omitted).

Here, the evidence taken in the light most favorable to Mr. Vincent is as follows. Agent Rogers and alleged-CI Mr. Arthur devised a plan to entice Mr. Vincent to sell drugs to Agent Rogers in order to convert him into an asset in their investigation of Mr. Izenberg. After Agent Rogers burned his only bridge to Mr. Izenberg, Mr. Arthur complained to Mr. Vincent that Mr. Izenberg had damaged his (Mr. Arthur's) reputation with his friend's brother. That same evening, Mr. Arthur treated Mr. Vincent and his girlfriend to an all-expenses-

paid, week-long vacation to Mesquite, Nevada. On the way home from Nevada, Mr. Arthur again complained of personal embarrassment caused by Mr. Izenberg and asked Mr. Vincent to help him save face by selling drugs to "Greg" (Agent Rogers). Mr. Arthur also suggested there would be remuneration, with full knowledge that Mr. Vincent was unemployed, falling behind on his bills, had his car repossessed for lack of payments, and was being evicted for not paying rent. Ultimately, Mr. Vincent sold drugs to Agent Rogers, but only because of his sense of obligation after being treated to the free vacation and because "Arthur was a good friend of mine and he asked me to do him a favor."

Assuming, as the district court did, that Mr. Arthur was a government agent, his conduct can be fairly characterized as persuasion, fraudulent misrepresentations, coercive tactics, promises of reward, or a plea based on friendship. Although we have consistently used these terms to define the type of government inducement that may form the basis of an entrapment defense, we have never held that when law enforcement employs any degree of persuasion, any use of coercive tactics, any promise of reward, or any plea based on friendship the defendant is entitled to an entrapment jury instruction. Indeed, it has long been recognized that government infiltration of drug enterprises, often through the use of confidential informants who ingratiate themselves to drug dealers by using deceit and offering things of value, is vital to law enforcement's ability to thwart or at least disrupt drug trafficking. *See United States v. Russell*,

411 U.S. 423, 432 (1973) (recognizing that the infiltration of drug rings is "a recognized and permissible means of investigation," that "an agent will not be taken into the confidence of the illegal entrepreneurs unless he has something of value to offer them," and that "there are circumstances when the use of deceit is the only practicable law enforcement technique available").

For this reason, we have long held that a defendant is entitled to a jury instruction on entrapment only when the government conduct is such that a reasonable jury could find that it "creates a substantial risk that an undisposed person or otherwise law-abiding citizen would commit the offense." *Scull*, 321 F.3d at 1275. While Mr. Vincent may well have felt indebted to Mr. Arthur following the trip to Mesquite and may have felt obligated to assist his friend in restoring his reputation, a reasonable jury could not conclude that Mr. Arthur's benevolence and invocations of sympathy created a substantial risk that an otherwise law-abiding citizen would take up the methamphetamine trade. Accordingly, the district court correctly refused to instruct the jury on entrapment.

B.     Disclosure of Confidential Informant

Mr. Vincent also alleges that the district court erred when it denied his motion to disclose the identity of the government's CI. Mr. Vincent maintains that without the disclosure of the CI's identity, his defense of entrapment was undermined. We review the denial of a defendant's motion for disclosure of an

informant's identity for abuse of discretion. *United States v. Martinez*, 979 F.2d 1424, 1426 (10th Cir. 1992); *United States v. Moralez*, 908 F.2d 565, 567 (10th Cir. 1990). *But see United States v. Mendoza-Salgado*, 964 F.2d 993, 1001 (10th Cir. 1992) (applying de novo standard of review).

"Due to the strong public interest in furthering effective law enforcement, the government enjoys a privilege to withhold from disclosure the identity of persons who furnish law enforcement officers with information on criminal acts." *Mendoza-Salgado*, 964 F.2d at 1000. The privilege must give way, however, when "the disclosure of an informer's identity . . . is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." *Roviaro v. United States*, 353 U.S. 53, 60–61 (1957). "The need for disclosure depends on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Mendoza-Salgado*, 964 F.2d at 1000 (quotations omitted). Therefore, we balance "the public interest in protecting the flow of information against the individual's right to prepare his defense." *Roviaro*, 353 U.S. at 62. The defendant has the "burden of demonstrating a need for disclosure." *Martinez*, 979 F.2d at 1426.

Here, the district court did not abuse its discretion in refusing to order disclosure. Because Mr. Vincent is convinced he already knows the identity of the CI, the only possible benefit to Mr. Vincent's defense is a formal recognition

that Mr. Arthur was a government agent whose actions can form the basis of an entrapment defense.  As we hold above, however, the district court correctly concluded that even assuming Mr. Arthur was the CI, Mr. Vincent did not adequately raise an entrapment defense.  And, because the jury was not instructed regarding entrapment, disclosure was of no benefit to Mr. Vincent.  *See United States v. Kerris*, 748 F.2d 610, 614 (11th Cir. 1984) ("[U]ntil the [entrapment] defense is properly raised, a court need not order the government to disclose the identity of the informant."); *United States v. Sharp*, 778 F.2d 1182, 1187 (6th Cir. 1985) ("Where the defendant claims entrapment, he must adduce some evidence of entrapment before the government is called upon to disclose . . . [the] identity of an informant.").  Therefore, the district court did not abuse its discretion in denying Mr. Vincent's motion for disclosure.

### III.  CONCLUSION

For the foregoing reasons, we AFFIRM the district court judgment and Mr. Vincent's convictions.