FILED
United States Court of Appeals
Tenth Circuit

April 2, 2021

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

JALIL LEMASON ROBINSON, a/k/a
Talk Big,

      Defendant - Appellant.

No. 19-1256

_____

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 1:18-CR-00144-PAB-1)**
_____

Ryan A. Ray, Norman Wohlgemuth Chandler Jeter Barnett & Ray, P.C., Tulsa, Oklahoma, for Defendant-Appellant.

J. Bishop Grewell, Assistant United States Attorney (Jason R. Dunn, United States Attorney with him on the briefs), Denver, Colorado for Plaintiff-Appellee.
_____

Before **HARTZ**, **MATHESON**, and **CARSON**, Circuit Judges.
_____

**CARSON**, Circuit Judge.
_____

"Talk Big" doubled as Defendant Jalil Lemason Robinson's handle on a dating website and his strategy for recruiting seventeen-year-old Nikki from Colorado to work for him as a prostitute on that same site. Promising a life of luxury, Defendant convinced

Nikki, who originally represented herself as eighteen-year-old Brooke, to come join him as his "business partner" in California. Little did he know he was communicating with an undercover officer posing as Nikki.

Defendant's actions led to a jury convicting him of attempted sex trafficking of a minor under 18 U.S.C. § 1591(a)—Congress' response to the growing problem of domestic sex trafficking. Defendant claims the government produced insufficient evidence to find him guilty of attempted sex trafficking of a minor. The record establishes the contrary. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm Defendant's conviction and sentence of 188 months' imprisonment.

## I.

FBI task force officer, Agent Tangeman, created a fictional social media profile on a dating website. Tangeman's character—Brooke—claimed to be an eighteen-year-old from Aurora, Colorado.[1] Although Brooke had a profile on the adult dating site, the website could not guarantee her age because it relied on self-verification to confirm its users' ages. Defendant maintained a profile on the same website going by "Talk Big." Defendant promoted: "40 hours for 350 a week or 1500 a night, choose wisely." Through his profile, Defendant sought a business partner—meaning a prostitute—ideally

---

[1] We refer to Brooke/Nikki by these names at the appropriate times throughout the opinion even though she is not a real person. Agent Tangeman crafted Nikki's messages and he used a confidential source for the phone call.

2

age eighteen to thirty-five. Defendant contacted Brooke, but several weeks passed before she responded. Once in contact, their conversations quickly progressed.

Defendant offered Brooke a life of luxury as his "business partner" and offered to "show her the way" by taking her to a few strip clubs and sharing other resources. Intrigued, Brooke asked how much money she could make. His response, "Baby we can make hella money" and left her his number.

Brooke texted him the next day and broke the news that she was only seventeen years old and that her real name was Nikki. Despite learning Nikki's age, Defendant continued the conversation and his plans. When Nikki showed hesitation and fear, Defendant reassured her and promised a life of luxury. The next day, they talked on the phone to shore up plans for Nikki's eventual prostitution. Defendant said Nikki would need a fake ID for "safety" until she turned eighteen. Defendant said he was eager to teach Nikki to become "perfection" by the time she turned eighteen, and seduced her with promises of earning big money in a short amount of time. Portraying herself as vulnerable and eager to leave Colorado and make money, Nikki succumbed to Defendant's promise of a lavish life and agreed to travel to Defendant in California. As promised, Defendant showed up at a California bus terminal to meet Nikki. There, federal law enforcement agents confronted and arrested him. Authorities charged Defendant with attempted sex trafficking of a child and transporting an individual to engage in prostitution.

3

Defendant asserted at trial that he planned to keep things strictly platonic until Nikki's eighteenth birthday. But the jury did not buy it and found Defendant guilty on both counts.

## II.

Defendant claims prosecutors presented insufficient evidence to support his conviction for attempted sex trafficking of a minor in violation of 18 U.S.C. § 1591(a). He also claims the district court erred by (1) denying his request for an entrapment jury instruction; (2) denying his request to compel the government to disclose its confidential source; (3) admitting Agent Tangeman's lay and expert testimony at trial; and (4) by failing to admit a trial exhibit in its entirety. Defendant finally contends he was prejudiced by cumulative error and received a substantively unreasonable sentence.

## A.

Defendant claims the government presented insufficient evidence to convict him. We review de novo whether there was sufficient evidence to support a defendant's convictions. United States v. Isabella, 918 F.3d 816, 830 (10th Cir. 2019). In doing so, we view the evidence and any reasonable inferences drawn from it in the light most favorable to the government. Id. "We consider all evidence, circumstantial and direct, but we do not weigh the evidence or consider credibility of the witnesses." Id. (citing United States v. Rufai, 732 F.3d 1175, 1188 (10th Cir. 2013)). "We will reverse a conviction for insufficient evidence only when no reasonable jury could find the defendant guilty beyond a reasonable doubt." Id.

4

(citing United States v. Anaya, 727 F.3d 1043, 1050 (10th Cir. 2013)). "We will not uphold a conviction, however, that was obtained by nothing more than piling inference upon inference, or where the evidence raises no more than a mere suspicion of guilt." United States v. Rahseparian, 231 F.3d 1257, 1262 (10th Cir. 2000) (internal citations and quotation marks omitted) (first citing United States v. Fox, 902 F.2d 1508, 1513 (10th Cir. 1990); then citing United States v. Smith, 133 F.3d 737, 742 (10th Cir. 1997)).

To convict Defendant under 18 U.S.C. § 1591(a), the government had to prove beyond a reasonable doubt that: (1) Defendant knowingly attempted to recruit, entice, harbor, transport, provide, obtain, maintain, patronize, or solicit Nikki; (2) Defendant knew or recklessly disregarded that Nikki was under the age of 18 and would be caused to engage in a commercial sex act; and (3) the offense was in or affecting interstate commerce. Defendant admitted at trial that he knowingly recruited seventeen-year-old Nikki to engage in commercial sex acts. He contends, however, that the trial evidence did not demonstrate that he intended for her to engage in those commercial sex acts while still a minor. In considering his sufficiency claim, we first discuss the text message and phone call evidence from trial. Then we review Agent Tangeman's testimony.

1.

Although a short-lived digital connection, Defendant eagerly laid the foundation to gain Nikki's trust and helped plan her move. Defendant eased Nikki's apprehension about joining the "business" by telling her he would take care of her as he worked to develop a bond through their interactions on the dating app. He filled her mind with

5

dreams of making big money in a short amount of time.  Defendant's messages and phone calls support the inference that he intended for Nikki to engage in commercial sex acts before she turned eighteen.

In their first substantial text message conversation, Nikki told Defendant that she was only seventeen years old. Even though he testified at trial that this disclosure made him hesitant to proceed, Defendant did not withdraw from the conversation.  Instead, Defendant immediately responded, "We will talk more on us when I get there, just need you to hang tight until I get there, okay?"

To address this new-found information, Defendant suggested Nikki obtain a fake ID to use until her birthday for "safety."  He said they should take the Greyhound bus from Colorado to California because she did not have an ID.  Defendant then asked Nikki if her aunt would react negatively to her leaving the state because he did not want any problems.  Nikki said there would be no problems if she checked in.  Defendant responded:  "I mean until your 18 then they can't say shit about where or how you do your Life"; "I just don't want any issues ya know"; and "We would have to keep things hella discreet."  He later said: "But on your birthday we will be doing things bigger and better." At no point did Defendant withdraw his plans to bring Nikki to California. Rather, he dove deeper into the plan by suggesting Nikki needed a fake ID, ensuring her family would not miss her, and insisting things remain "hella discreet."  From these statements, the jury could reasonably infer Defendant intended for Nikki to engage in commercial sex acts before she turned eighteen.

Defendant also insisted on talking to Nikki over the phone. To oblige, she called him the next day. Nikki disclosed she had a rough home life and that she could leave her aunt and uncle without issue. Defendant seemed concerned about her age, but said: "I still might if I could use a little bit of time that you got until your 18th birthday and stalling, and you know teaching you how things go then by the time you do reach the age then you'll be perfection." Defendant again brought up the need for a fake ID "for safety." He then described the rates for various types of "dates." Defendant offered to teach Nikki "what to do, when to do it, and how to do it." Within two weeks of their initial conversation and five to six months before her eighteenth birthday, Defendant bought Nikki a $224 one-way bus ticket so she could join him in California.

Throughout their correspondence, Defendant repeatedly asked Nikki to send him nude photos. When she refused, he said: "Guess you not gonna let me see what belongs to me." Defendant tried to convince the court that he requested the nude photos to establish Nikki was a real person. But the records showed that when Nikki remained reluctant to send nude photos, Defendant said, "Once we're together there's gonna be more than just taking pics."

Defendant's request for discretion, insistence she obtain a fake ID for "safety" and generally cautious approach support the inference that he intended for Nikki to engage in commercial sex acts as a minor. At trial, Defendant tried to explain Nikki needed the fake ID for use in legal activities—but fake ID use inherently leads to participation in illegal activity. Finally, he promised to make her perfection and commented that "more than just taking pics" would happen once they were together. Armed with this evidence,

7

a jury could reasonably infer Defendant intended for Nikki to engage in commercial sex acts before she turned eighteen.

2.

Besides Defendant's texts, phone conversations, and testimony, Agent Tangeman's expert testimony also supports the jury's conclusion that Defendant intended for Nikki to engage in commercial sex acts as a minor. Agent Tangeman is an investigator with the Arapahoe County Sheriff's Office, which assigned him to work with the FBI Innocence Lost Task Force ("Task Force"). In that role, he investigates crimes involving the sexual exploitation of children and human trafficking. Agent Tangeman explained on direct examination how pimps recruit trafficking victims, the types of individuals pimps seek, and the relationship that develops between pimps and victims. He emphasized how a pimp tells his victim that he will provide emotional support, material things, travel, and generally promise a lavish lifestyle. Defendant did just this throughout his communications with Nikki. In their extended messaging, Defendant told her "I promise if you stick around and really go hard for me I will bless you with everything I can possibly give you[.]" Defendant made most of these promises after he learned Nikki was a minor.

Agent Tangeman also discussed how pimps protect themselves when they know their recruit is a minor. For example, he discussed that pimps generally obtain a fake ID for the underage child to alleviate culpability. As an expert, Agent Tangeman opined that a pimp's request to delete messages and insistence on discretion are designed to protect themselves when pimping a minor. Defendant told Nikki she needed a fake ID, regularly

8

requested she delete messages, and had Nikki ensure her departure would not raise issues with her family. Agent Tangeman's testimony about how pimps treat underage recruits and Defendant's behavior support the reasonable inference that Defendant intended to have Nikki engage in commercial sex acts while still a minor. In addition, a different FBI special agent also testified that, in his experience, pimps did not wait to have their victim engage in commercial sex acts until they reached the age of majority. In reviewing all the evidence in a light most favorable to the government, we conclude evidence exists in the record sufficient to support the jury's determination that Defendant intended for Nikki to engage in commercial sex acts while still a minor.

B.

Defendant next appeals the district court's denial of his request for an entrapment jury instruction. We review the court's refusal to provide the entrapment defense jury instruction de novo. United States v. Scull, 321 F.3d 1270, 1274 (10th Cir. 2003) (citing United States v. Ortiz, 804 F.2d 1161, 1164 (10th Cir. 1989)). Because "'[t]he question of entrapment is generally one for the jury, rather than for the court,'" an entrapment jury instruction is appropriate only when a defendant produces "'sufficient evidence from which a reasonable jury could find entrapment.'" United States v. Vincent, 611 F.3d 1246, 1250 (10th Cir. 2010) (first quoting Mathews v. United States, 485 U.S. 58, 63 (1988); then quoting Scull, 321 F.3d at 1275). "For the purposes of determining the sufficiency of the evidence to raise the jury [instruction] issue, the testimony most favorable to the defendant should be accepted." Scull, 321 F.3d at 1275 (quoting United States v. Reyes, 645 F.2d 285, 287 (5th Cir. 1981)) (quotation marks omitted).

To prevail, Defendant must show that: (1) the government agents induced him to commit the offense; and (2) that he was not otherwise predisposed to commit the offense, if given the opportunity. See United States v. Ngyuen, 413 F.3d 1170, 1178 (10th Cir. 2005) (quoting United States v. Young, 954 F.2d 614, 616 (10th Cir. 1992)). "'[G]overnment conduct which creates a substantial risk that an undisposed person or otherwise law-abiding citizen would commit the offense'" constitutes inducement. Scull, 321 F.3d at 1275 (quoting Ortiz, 804 F.2d 1161, 1165 (10th Cir. 1986)). "Evidence that a government agent solicited, requested or approached the defendant to engage in criminal conduct, standing alone, is insufficient to constitute inducement." Ortiz, 804 F.2d at 1165. Evidence that the government initiated contact with the defendant or proposed the crime does not rise to inducement. Id.

Defendant contends that the government's use of a dating website limited to persons over eighteen years old led him to reasonably believe he was talking with an adult when he started his conversation with Brooke/Nikki. Thus, he argues, the government's conduct (delay in disclosing Nikki was underage) shows agents induced him to engage in illegal conduct with a minor. We disagree.

When the government disclosed Nikki was underage, it provided Defendant with an out he refused to take. See United States v. Munro, 394 F.3d 865, 871–72, n.2 (10th Cir. 2005) (finding no entrapment jury instruction was warranted where the government offered a chance to back out of the potential crime). Despite learning Nikki's age, Defendant caused the relationship to progress. Far from ending things, Defendant kept communicating with Nikki, made plans to obtain her fake ID, and asked her to delete

10

messages and keep things discrete.  He even bought her a bus ticket so she could move to California and live with him prior to her eighteenth birthday.  He told her they could use the time awaiting her birthday to make her "perfection."  He asked Nikki to send nude photos, and chastised her for her reluctance to send them.  The government did not start these advancements and therefore, did not induce Defendant to engage in conduct with a minor.  When the government does not induce the conduct, there can be no entrapment.[2]

Sufficient evidence does not support the conclusion that a reasonable jury could find entrapment.  The evidence instead shows Defendant continued to engage in recruitment activity *after* he learned Nikki's real age.  For this reason, the district court did not err in denying Defendant's request for an entrapment jury instruction.

C.

Defendant also appeals the denial of his request that the government disclose its confidential source's identity.  "We review the denial of a defendant's motion for disclosure of an informant's identity for abuse of discretion."  Vincent, 611 F.3d at 1251 (citing United States v. Martinez, 979 F.2d 1424, 1426 (10th Cir. 1992)).  The government enjoys a privilege to withhold disclosure of a confidential source's identity due to a strong public interest in furthering effective law enforcement.  Id. (citing United States v. Mendoza-Salgado, 964 F.2d 993, 1000 (10th Cir. 1992)).  Disclosure is proper when the "'informer's identity . . . is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause.'"  Id.  (quoting Roviaro v. United States,

_____

[2] Because Defendant's entrapment argument fails on the inducement prong, we need not consider the predisposition prong.

11

353 U.S. 53, 60–61 (1957)).  But when the identity is not relevant, helpful, or serves merely a cumulative purpose, we have not required disclosure.  See Mendoza-Salgado, 964 F.2d at 1000–01.

Defendant claims his entrapment defense requires the government's disclosure of the confidential source's identity.  Relying on Roviaro, Defendant asserts that because he raised a plausible entrapment defense, he may confront the confidential source to obtain information about his entrapment defense.  Defendant, however, misreads Roviaro.  In Roviaro, the confidential informant played an active role in the charged illegal activity.  353 U.S. at 58–59.  There, the government sought to keep the informant's identity privileged, even though the informant could provide information about certain parts of the transaction not otherwise available to the defendant.  Id.  The court permitted disclosure of the confidential informant because the confidential informant's identity and testimony were highly relevant and material to the defense.  Id. at 62–64.

Unlike Roviaro, the district court admitted transcripts of all conversations between the confidential source and Defendant into evidence.  They had no other contact.  Thus, the confidential source would have added nothing new and her testimony would have been unnecessarily cumulative.  Even so, Defendant contends the confidential source could help him prove inducement.  Defendant's continued contact and communication with Nikki after she disclosed her age shows the government did not induce Defendant.  In fact, as discussed above, the opposite remains true.  Moreover, disclosure and testimony from the confidential source would not add to the entrapment defense.  Unlike in Roviaro, Defendant participated in all the conversations that included the confidential

12

source and never disputed that the transcripts the government provided to him accurately captured the words spoken between Defendant and the informant. Thus, unlike Roviaro, Defendant could not obtain any non-cumulative evidence from the confidential source. Thus, Defendant cannot show the district court abused its discretion in denying the motion to disclose the confidential source.

D.

Next, Defendant argues the district court erred in admitting Agent Tangeman's expert testimony. We review the decision to admit or exclude expert testimony for an abuse of discretion. United States v. Abdush-Shakur, 465 F.3d 458, 466 (10th Cir. 2006).

1.

Defendant contends the district court erred by allowing Agent Tangeman to provide expert testimony at trial about the pimping and prostitution culture. Defendant claims that because some of this testimony bore no relevance to the elements of the charged offense, the district court inappropriately admitted it under Federal Rules of Evidence 401, 403, and 702.[3] We disagree.

In urging reversal, Defendant relies on our decision in Abdush-Shakur where we held the district court did not abuse its discretion by excluding expert culture testimony

---

[3] Defendant briefly asserts that the generalities about pimps and pimping culture should have been excluded under these evidentiary rules. Because Defendant does not develop any argument in his opening brief specific to these rules, he effectively waives this argument. See United States v. Cooper, 654 F.3d 1104, 1128 (10th Cir. 2011) (quoting Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 679 (10th Cir. 1998) ("It is well settled that [a]rguments inadequately briefed in the opening brief are waived.") (internal quotation marks omitted)).

because it lacked relevancy to an element of the charged offense. Id. at 466–67. In that case, the government charged the defendant with attempted murder and possession of a prohibited object in violation of 18 U.S.C. §§ 113 and 1791(a)(2). Id. at 460. At trial, the defendant offered expert testimony about the "culture of violence" in federal penitentiaries to explain his violent retaliation toward a disrespectful officer. Id. at 466. The defendant claimed he intended only to wound the officer and not kill him and that the expert testimony explained his motive. Id. The court found the expert's testimony was not relevant to the defendant's case. Id. The court reasoned that while the defendant's proffered expert testimony might show a generic culture of violence in prisons and establish the defendant did not respond unusually for a prisoner, the testimony did not legally excuse his attack on the corrections officer by negating an element of the crime. Id. at 466–67. Because the expert testimony did not negate the mens rea, the district court properly excluded it because the testimony was not relevant. Id. at 467.

The government's use of cultural testimony differs here. Agent Tangeman's testimony provided a basis on which the jury could infer that Defendant recruited a vulnerable girl seeking structure and stability in her life. Unlike Abdush-Shakur, the government here used expert cultural testimony along with the communications between Defendant and Nikki to show that Defendant intended to have Nikki engage in commercial sex acts while still a minor. So, the expert testimony related to an element of the crime. For this reason, the district court did not abuse its discretion by allowing Tangeman to provide expert testimony on pimping and prostitution culture.

14

## 2.

Defendant next complains the district court improperly allowed Tangeman to testify as both a fact and expert witness without providing his requested jury instructions. We review the jury instructions given by the court, de novo "to determine whether, taken in their entirety, they correctly informed the jury of the governing law." Gust v. Jones, 162 F.3d 587, 596 (10th Cir. 1998) (citing Summers v. Mo. Pac. R.R. Sys., 132 F.3d 599, 606 (10th Cir. 1997)). Waiver occurs, however, when a party invites the error below. See United States v. Zubia-Torres, 550 F.3d 1202, 1205 (10th Cir. 2008).

Although Defendant now complains about the lack of a jury instruction on Agent Tangeman's expert and fact testimony, he did not object (and in fact agreed) to the jury instruction about Tangeman's testimony before the district court. He has therefore invited any error caused by the lack of instructions and has waived his right to challenge them. United States v. Cornelius, 696 F.3d 1307, 1319 (10th Cir. 2012) ("Under the invited error doctrine, this Court will not engage in appellate review when a defendant has waived his right to challenge a jury instruction by affirmatively approving it at trial.").

## E.

At trial the government sought to enter its Exhibit 47, a 207-page document of comments, including comments from Defendant, from the online dating site, into evidence. Defendant objected, arguing that many pages of Exhibit 47 were not relevant and should be excluded. The court sustained the objection and, without further objection from defense counsel, required the government to admit only the relevant pages one at a

time. Ironically, Defendant now claims that the government's 207-page Exhibit 47 contained exculpatory statements and that the district court erred by not admitting those statements under Federal Rule of Evidence 106.

Defendant acknowledges his failure to present this argument to the district court and, requests that we review the district court's failure to admit (presumably sua sponte) these purportedly exculpatory statements for plain error. But plain error review is reserved for forfeited arguments, not arguments occasioned by the district court's adoption of a defendant's own erroneous suggestion. United States v. Carrasco-Salazar, 494 F.3d 1270, 1272 (10th Cir. 2007); see also United States v. Hardwell, 80 F.3d 1471, 1487 (10th Cir. 1996) ("A defendant cannot invite a ruling and then have it set aside on appeal."). Here, the government's proposed exhibit contained the exculpatory statements Defendant now says the district court should have admitted. But Defendant caused their exclusion through his own relevance objection to the district court. As a result, if the district court erred by not admitting evidence it did not know Defendant believed was exculpatory, the error was invited. And unlike forfeited arguments, which we review for plain error, invited errors are waived and we do not review them at all. See United States v. Cruz-Rodriguez, 570 F.3d 1179, 1183 (10th Cir. 2009).

F.

Defendant next argues that even if we determine the district court's errors were harmless, the aggregation of those errors leads to cumulative error. "Cumulative error cannot be predicated on non-errors." United States v. Oldbear, 568 F.3d 814, 825 (10th Cir. 2009). Nor can it be predicated on invited error. United States v. Lopez-Medina, 596

16

F.3d 716, 733 n.10, 741 (10th Cir. 2010). Because Defendant identifies, at most, invited error, we reject his cumulative error argument.

G.

Defendant lastly argues his sentence was substantively unreasonable. We review a sentence for reasonableness. United States v. Kristl, 437 F.3d 1050, 1053 (10th Cir. 2006). A sentence within the Guidelines range is presumed reasonable. Id. at 1054. On reasonableness review, we ask whether the district court abused its discretion. United States v. Smart, 518 F.3d 800, 805–06 (10th Cir. 2008).

Defendant contends his 188-month sentence is substantively unreasonable for two reasons. First, he argues his sentence resulted from Tangeman's alleged outrageous government conduct. Defendant asserts that decreasing Nikki's age to seventeen years old amounts to outrageous government conduct. It does not. "The outrageous conduct defense . . . is an extraordinary defense that will only be applied in the most egregious circumstances." United States v. Pedraza, 27 F.3d 1515, 1521 (10th Cir. 1994). "To succeed on an outrageous conduct defense, the defendant must show either: (1) excessive government involvement in the creation of the crime, or (2) significant governmental coercion to induce the crime." Id. (citing United States v. Mosley, 965 F.2d 906, 908 (10th Cir. 1992)).

Defendant's claim that the government created the crime by misrepresenting Nikki's age lacks merit. The dating website only requires the participant to click and verify his or her age. This simple verification process allows minors to easily join the site. Defendant unreasonably assumes all users are at least eighteen years old. So the

17

government's decision to make Nikki a minor on a website that requires minimal age-verification does not amount to outrageous government conduct.

More importantly, Defendant reached out to Brooke/Nikki and put in motion the plan to pursue a "business partnership." And despite Defendant's claim that the government coerced him into the crime through Nikki's continued conversations and plans to meet, a review of the conversations in the appellate record shows the contrary to be true. The conversations continued long after Nikki revealed her true age. Defendant maintained contact, pressed to meet her, and bought her a bus ticket to California from Denver. Defendant claims Tangeman "induced" him to commit a different crime solely so the government could unfairly seek an enhanced sentence. But his claim is without merit. The government offered Defendant several opportunities to call off his plans with Nikki. Her admission to being seventeen years old was the most obvious one. Even so, Defendant continued communicating with her after the age revelation and cultivated their relationship for the future. Defendant provides no evidence that excessive government involvement existed in the creation of the crime nor does evidence support significant governmental coercion to induce the crime.

Defendant next argues his sentence is unreasonable because he accepted responsibility. Defendant believes he should get credit for admitting to his intent to prostitute Nikki when he believed her to be eighteen. Such an admission does not constitute acceptance of responsibility. Rather, as the district court properly found, Defendant's request for acquittal on both charged offenses shows he did not accept

18

responsibility.  For these reasons, we conclude Defendant's sentence was not substantively unreasonable.

AFFIRMED.